| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number — | FOR COURT USE ONLY |
|---|---|
| (30849)<br><br>RICHARD R. CLEMENTS, ESQ.<br>LAW OFFICES OF RICHARD R. CLEMENTS, P.C.<br>1154 East Wardlow Road<br>Long Beach, California 90807-4733<br>Telephone: (562)424-7919<br>Facsimile: (562)424-0559<br>E-Mail: rclements1@verizon.net<br><br>*Attorney for Plaintiff* KVASSAY TAMILY TRUST | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>PETER EMANUEL KVASSAY,<br><br><div align="right">Debtor.</div> | CHAPTER ___7___ |
|---|---|
| | CASE NUMBER 2:12-bk-40267-PC |
| | ADVERSARY NUMBER |
| ROBERT KVASSAY, INDIVIDUALLY, AND THE<br>KVASSAY FAMILY TRUST DATED FEBRUARY 26, 1993 Plaintiff(s),<br><div align="center">vs.</div><br>PETER EMANUEL KVASSAY,<br>AN INDIVIDUAL,<br><div align="right">Defendant(s).</div> | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____ , the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| **Hearing Date:** | **Time:** | **Courtroom:** | **Floor:** |
|---|---|---|---|
| ☐ **255 East Temple Street, Los Angeles** | | ☐ **411 West Fourth Street, Santa Ana** | |
| ☐ **21041 Burbank Boulevard, Woodland Hills** | | ☐ **1415 State Street, Santa Barbara** | |
| ☐ **3420 Twelfth Street, Riverside** | | | |

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By:_____
*Deputy Clerk*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*

**F 7004-1**

F70041

**F 7004-1**

| In re                         (SHORT TITLE)                                      | CASE NO.:2:12-bk-40267PC |
|---|---|
| PETER EMANUEL KVASSAY, DEBTOR,   v. |  |
| ROBERT KVASSAY, ETC v. PETER EMANUEL KVASSAY          Debtor(s). |  |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1154 East Wardlow Road, Long Beach, California 90807

A true and correct copy of the foregoing document described as  COMPLAINT FOR NONDISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. 523(a)(2)(A), etc. & SUMMONS         will be served or was served **(a)** on the judge
in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  Nov. 30, 2012         I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

PETER EMANUEL KVASSAY     (U.S. Postal Service)          TROY A. STEWART (U.S. Postal Service)
1035-C Westminster Avenue                                P.O. Box 390
Alhambra, CA    91803                                    Glendale, CA  91209-0390

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on Nov. 30-2012         I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Peter H. Carroll, Edward R. Roybal Building & Courthouse, 255 E. Temple St., Bin
outside suite 1460, Los Angeles, CA 90012 (U.S.Postal Service)
* Office of the U.S. Trustee, 725 So. Figueroa St., Suite 2600, Los Angeles, CA 90017
Timothy Woo (TR), Levene Neale Bender Yoo & Brill LLP, 800 S. Figueroa St., #1260,
Los Angeles, CA  90017  (e-mail:  tjytrustee@lnbyb.com)
U.S. Trustee(LA) ustpregion16.la.ecf@usdoj.gov          ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| NOV 3 0 2012 | CAROL J. BURNETT | *Carol J. Burnett* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

2  RICHARD R. CLEMENTS (CA Bar No. 30849)
   LAW OFFICES OF RICHARD R. CLEMENTS
3  A Professional Corporation
   1154 East Wardlow Road
4  Long Beach, California   90807

5  Telephone:  (562)424-7919

6  Attorney for Plaintiff,
   ROBERT KVASSAY and THE
7  KVASSAY FAMILY TRUST

8

9              UNITED STATES BANKRUPTCY COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      CENTRAL DIVISION

12  In re                    )
       PETER EMANUEL KVASSAY, )    CASE NO. 2:12-bk-40267-PC
13                           )    Chapter 7
                             )
14              Debtor.      )    Adversary No.:
                             )
15  ——————————————————————   )
                             )    COMPLAINT FOR NONDISCHARGEABILITY
16  ROBERT KVASSAY, INDIVIDUALLY, )  OF DEBT PURSUANT TO 11 U.S.C.
    AND THE KVASSAY FAMILY TRUST )   523(a)(2)(A); 523(a)(2)(B);
17  DATED FEBRUARY 26, 1993. )    523(a)(4); and 524(a)(6)
                             )
18              Plaintiff,   )
    v.                       )    DATE:   (TO BE SET)
19                           )    TIME:   (TO BE SET)
    PETER EMANUEL KVASSAY, AN )    COURTROOM:   1468
20  INDIVIDUAL,              )
                             )
21              Defendant.   )
                             )
22  ——————————————————————

23       Plaintiffs, The Kvassay Family Trust dated February 26, 1993,

24  ("Trust"),   and Robert Kvassay, Individually and as Successor

25  Trustee of said Trust, pursuant to 11 U.S.C. 523(a) and Bankruptcy

26  Rules 4007 and 7701(6) of the Federal Rules of Bankruptcy Procedure,

27  complain as follows:

28

JURISDICTION

1. At all relevant times, plaintiff Trust has been and is a trust duly organized and existing under the Law of the State of California;

2. Plaintiff Robert Kvassay is a resident of Covina, California, and, on or about January 12, 2007, pursuant to the terms of said Trust, became the duly authorized and acting Successor Trustee of the Trust;

3. On September 5, 2012, the Debtor filed for relief pursuant to Chapter 7 of the United States Bankruptcy Code and the Debtor's case was assigned the above number 2:12-bk-40267-PC (the "Case").

4. This is an adversary proceeding brought in the case by plaintiffs pursuant to 11 U.S.C. 523(a). This matter is a core proceeding as defined in 28 U.S.C. 157(b)(2)(I);

5. The above-captioned Bankruptcy Court has jurisdiction over the subject matter raised in this complaint pursuant to 28 U.S.C. 1334. Venue is proper under 28 U.S.C. 1408 and 1409;

6. The Debtor may be properly served at 1035-C Westminster Avenue, Alhambra, California 91803 (the address on Debtor's bankruptcy proceedings);

FACTUAL ALLEGATIONS

7. That, in February 1993, plaintiff Trust was established by Emanual Kvassay and Maria Kvassay (Trustors), husband and wife, naming themselves or their survivor as initial Trustors;

8. The Trust also designated as successor trustees (in Section 6.16 thereof), the Trustors' son and defendant Peter Kvassay as the initial successor trustee and the trustors son, Plaintiff Robert Kvassay, as the alternate successor trustee;

2

1    9.   Settlor Trustee Maria Kvassay died April 22, 2001 and surviving

2    Settlor and Trustee Emanuel Kvassay died October 11, 2006.   As a

3    result, as directed by the terms of the Trust, defendant became the

4    successor trustee of the Trust.

5    10.   Thereafter, on January 12, 2007, defendant resigned as

6    successor trustee to the Trust by executing "Resignation of

7    Successor Trustee To The Kvassay Trust Dated February 26, 1993"

8    ("Resignation") which states "I, Peter Kvassay, decline my position

9    to serve as Successor Trustee. I further understand and acknowledge

10    that Robert Kvassay will now serve as Successor Trustee, and that he

11    and only he shall be responsible to execute and fulfill all of the

12    trust provisions". A true and correct copy of the Resignation is

13    attached hereto, and incorporated by reference by this reference as

14    Exhibit "A". The Resignation is signed by Defendant and notarized.

15    11.   That, at the time that plaintiff commenced his duties as

16    successor trustee, the properties were in a state of extreme

17    dilapidation, need for deferred maintenance, and repair, caused by

18    waste committed by defendant.   That, as a result, plaintiff has

19    expended hundreds of thousands of dollars of his own personal funds

20    in improving and repairing the Trust property (for which Plaintiff

21    has not been reimbursed).

22    12.   That, in July 2007, although Defendant had resigned from his

23    position as Successor Trustee of the Trust, he thereafter

24    represented himself as Trustee of the Trust in order to obtain a

25    loan against the property owned by the Trust. A true and correct

26    copy of the Loan Agreement is attached hereto, is marked Exhibit

27    "B", and is incorporated herein by this reference.

28    13.   Additionally, at the approximate same time on July 3, 2007,

3

1   Defendant executed a Note Secured by Deed of Trust ("Note") with a
2   principal amount of $1,500,000.00 secured by a Deed of Trust and
3   Assignment of Rents on the property. A true and correct copy of the
4   Note is attached hereto, is marked as Exhibit "C", and incorporated
5   herein by this reference.

6   14.   For both the Loan Agreement and the Note, Defendant
7   fraudulently certified and represented himself as the Trustee of the
8   Trust when, in reality, defendant was not the Trustee of the Trust.
9   Defendant made these false representations deliberately in order to
10  obtain the loan proceeds of $1,500,000.00 secured against the Trust
11  property.  Defendant had no right to sign on behalf of the Trust as
12  he was no longer the Trustee of the Trust.

13  15.   Defendant suppressed and concealed material facts which he had
14  a duty to disclose.   In particular, Defendant knew and concealed
15  from the lenders the material fact that he had resigned as Trustee
16  and could no longer act on behalf of the Trust.   Defendant had a
17  further duty to disclose these material facts to Plaintiff, the true
18  fiduciary.

19  16.   That, as a result of Defendant's deception, Defendant received
20  said funds and Defendant has been unable to satisfactorily account
21  for the funds received from the loan in question.

22  17.   That Plaintiff was totally unaware of Defendant's fraud.
23  Defendant's acts, as alleged herein, were done fraudently with a
24  conscious disregard for their fiduciary and common law duties to
25  plaintiffs and with a conscious disregard for the severe
26  consequences these acts have caused such that punitive and exemplary
27  damages should be awarded against defendant.

28  18.   That the Trustee discovered the fraudulent loan six (6) months

4

1   later, approximately around February 2008, and demanded turnover of
2   the funds and an accounting (to no avail) and unsuccessfully
3   attempted to recoup the moneys from Defendant.   Defendant did
4   maintain payments to the Note holder until mid-2009.   Thereafter,
5   Defendant refused to pay and the Plaintiff (individually) was forced
6   to obtain a personal loan for the same amount to prevent foreclosure
7   of the property.

8   19.   That thereafter, Defendant (who was residing on the property)
9   continued to attempt to block the attempts of Plaintiff to repair
10  the property (at Plaintiff Robert Kvassay's personal expense),
11  continued to commit acts of waste, and to physically block the
12  attempts of plaintiff's contractors.   The harassment and tortious
13  conduct of Defendant was so egregious that plaintiff

14  Robert Kvassay was compelled, on May 7, 2010, to initiate
15  proceedings seeking the eviction of Defendant, as well as seeking
16  the accounting, and seeking to charge defendant's share of the Trust
17  for the damages occasioned and caused by defendant's fraud,
18  conversion, and waste.

19  20.   That, by Court Order, Defendant has been evicted from the
20  premises.   That, on the eve of Trial in the State Court Proceedings
21  re accounting, Defendant filed these instant proceedings.   That
22  Plaintiff has duly moved, in this Court, for an order lifting the
23  automatic stay, which this court has granted by its conditional
24  order.

25              FIRST CAUSE OF ACTION
26                  (FRAUD)
27              11 U.S.C. 523(a)(4)
28  21.   Plaintiff hereby incorporates each of the foregoing paragraphs

5

1  to the same extent as though fully set forth herein.

2  22.  That, as a result of Defendant's fraudulent conduct, lies, and

3  misappropriation of funds when received, plaintiff has been damaged

4  in the sum of $1,500,000.00, together with those funds expended by

5  plaintiff Robert Kvassay to avoid and avert foreclosure.  That said

6  conduct is fraudulent, an embezzlement, and a misrepresentation by

7  an alleged fiduciary pursuant to 11 U.S.C. 523(a)(4).

8                      SECOND CAUSE OF ACTION

9                      11 U.S.C. 523 (a)(2)(A)

10  23.  Plaintiff incorporates by this reference paragraphs 1 though 20

11  above as if set forth in full.

12  24.  That, as a proximate result of the false pretenses, and false

13  representations, and actual fraud practiced by defendant orally and

14  in  actions,  plaintiffs  have  suffered  loss  in  the  amount  of

15  $1,500,000.00 together with all sums expended by plaintiff Robert

16  Kvassay to avert foreclosure, which damage is continuing;

17                      THIRD CAUSE OF ACTION

18                      11 U.S.C. 523(a)(2)(B)

19  25.  Plaintiff incorporates by this reference paragraphs 1 through

20  20 above as if set forth in full.

21  26.  That, an actual and proximate result of the false pretenses,

22  false representations, and use of statements in writing holding

23  forth defendant as successor trustee of plaintiff Trust to the

24  actual detriment of the initial lender and plaintiffs, that the

25  debtor caused to be made or published with intent to deceive,

26  plaintiffs have been damaged in the immediate sum of $1,500,000.00,

27  together with those sums required to be paid and advanced by

28  plaintiff Robert Kvassay in order to avert foreclosure, which

6

1  damages are continuing, said debt is nondischargeable pursuant to
2  the terns if 11 U.S.C. 523(a)(2)(B).

3                         FOURTH CAUSE OF ACTION

4                           11 U.S.C. 523(a)(6)

5  27.  Plaintiff incorporates by this reference paragraphs 1 through
6  20 above as if set forth in full.

7  28.   Pursuant to the Trust, Plaintiff Trust had clear legal
8  ownership and right to possession of the property.   Defendant
9  wrongfully misappropriated part of the property for his own benefit
10 to plaintiff's detriment.

11 29.  Defendant further wilfully interfered with Robert Kvassay, as
12 successor trustee, possession of the property, not only converting
13 said funds as an act of wilful and malicious conversion but also
14 intentionally  committing acts of waste, to be established at the
15 time of trial of this matter.

16 30.    The aforementioned acts of defendant were wilful, wanton,
17 malicious, oppressive, and were undertaken with the intent to injure
18 and justify the awarding of exemplary and punitive damages.

19

20     WHEREFORE, Plaintiff seeks Judgment as follows:
21 A.   For Judgment pursuant to 11 U.S.C 523(a)(2)(A) and 11 U.S.C.
22 523(a)(2)(B) denying the dischargability of Defendant's liability to
23 plaintiff's for the fraulent conduct of defendant in the sum of
24 $1,500,000.00, together with additional damages for advances by
25 plaintiff Robert Kvassay to avert foreclosure of the properties;
26 B.    For Judgment pursuant to 11 U.S.C. 523(a)(4) denying the
27 dischargability of debtor's liability to plaintiffs for the
28 embezzlement of funds as stated;

                                   7

1 | C.   For Judgment pursuant to 11 U.S.C. 523(a)(6) denying the

2 | dischargability of defendants liability to plaintiffs for the wilful

3 | and malicious actions of defendant as pleaded and as according to

4 | proof;

5 | D.   For Judgment pursuant to 11 U.S.C. 523(a)(4) denying the

6 | dischargability of defendant's liability to plaintiffs for

7 | defendant's acts of wilful waste according to proof.

8 | E.   For damages, occasioned by the above, against Defendant by way

9 | of example pursuant to California Probate Section 859 for twice the

10 | value of the damage occasioned,

11 | F.   For punitive damages, against defendant, for treble damages for

12 | the amounts defendant has misappropriated pursuant to California

13 | Civil Code Section 3294(a);

14 | G.   For attorney's fees and costs of suit incurred herein as

15 | additional damages;

16 | H.   Any and all further relief the Court deems appropriate.

17 |         DATED:   November _22_, 2012.

18 |                         LAW OFFICES OF RICHARD R. CLEMENTS, P.C.

19 |                         By: _____

20 |                             RICHARD R. CLEMENTS,

21 |                             Attorneys for Plaintiffs

22

23

24

25

26

27

28

8

RESIGNATION OF SUCCESSOR TRUSTEE
TO THE
KVASSAY FAMILY TRUST
DATED FEBRUARY 26, 1993

As set forth in Section 6.16, Successor Trustee of the Last Trustor, as described in THE KVASSAY FAMILY TRUST DATED FEBRUARY 26, 1993, I, Peter Kvassay, decline my position to serve as Successor Trustee. I further understand and acknowledge that Robert Kvassay will now serve as Successor Trustee, and that he and only he shall be responsible to execute and fulfill all of the Trust provisions.

In all other respects, the Trust executed by the Trustor(s) remains unchanged.

Executed at 1554 Hill Drive, Los Angeles, California, 90041, on January 12th 2007.


_____               1/12/07
Peter Kvassay                                    _____
                                                 Date


NOTARY PUBLIC                    )
STATE OF CALIFORNIA              )ss.
COUNTY OF Los Angeles            )

On, January 12, 2007, before me, Romelo Salazar _____, Notary Public, Personally appeared, Peter Kvassay, known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on this instrument the person(s) or the entity upon behalf of which person(s) acted, executed the instrument.


WITNESS my hand and official seal              [THIS AREA FOR OFFICIAL NOTARY STAMP]


Signature _____

ROMULO SALAZAR
Commission # 1705699
Notary Public - California
Los Angeles County
My Comm. Expires Nov 17, 2010

                                                 EXHIBIT "A"

## REAL PROPERTY LOAN AGREEMENT AND ESCROW INSTRUCTIONS

THIS AGREEMENT (the "Agreement") is made on July 3, 2007 by and between PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST A, as to an undivided 76.9% interest, and PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST B, as to an undivided 23.1% interest, in common ("Borrower"), whose address is 1554 Hill Drive, Los Angeles, California 90041, and LONE OAK FUND, LLC, a California limited liability company ("Lender"), whose address is 11611 San Vicente Boulevard, Suite 640, Los Angeles, California 90049. The Agreement is entered into for the purpose of transacting a loan secured by real property (the "Loan").

This Agreement shall constitute both an agreement between Borrower and Lender and joint escrow instructions. Upon execution of this Agreement by Borrower and the deposit thereof with OLD REPUBLIC TITLE COMPANY ("Settlement Agent"), an escrow (the "Escrow") shall be opened with Settlement Agent. Borrower and Lender agree to execute, deliver and be bound by any reasonable or customary supplemental escrow instructions of Settlement Agent or other instruments as may reasonably be required by Settlement Agent in order to consummate the transactions contemplated by this Agreement. Any such supplemental instructions shall not conflict with, amend or supersede any portions of this Agreement. To the extent of any inconsistency between the provisions of such supplemental instructions and the provisions of this Agreement, the provisions of this Agreement shall control.

1

Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Deed of Trust and the other Loan Documents associated with this Loan.

1.    The Loan.

(a)    Lender shall loan Borrower the sum of $1,500,000.00, to be secured by a FIRST PRIORITY LIEN upon the following described real property (the "Mortgaged Property") situated in the City of Los Angeles, County of Los Angeles, State of California:

Those portions of Lot 2 of Tract No. 523, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 17, Page 12 of Maps, in the office of the Recorder of said County and of Lot 59, Watts Sub-Division, as per map recorded in Book 5, Pages 200 and 201, Miscellaneous Records of said County, described as a whole as follows:

Beginning at an angle point in the west line of said Lot 2 at the intersection of Hill Drive with Dahlia Drive; thence southerly following the various courses and curves of Dahlia Drive, 216.73 feet, measured at right angles therefrom; thence easterly along said parallel line, 261.24 feet to the west line of the land described in deed recorded in Book 4814 Page 208 of official records; thence northerly along said west line, 315.18 feet to the southwesterly line of said Hill Drive; thence northwesterly along said Drive, 3.90 feet to the northeast corner of said Lot 2; thence northwesterly and southwesterly following the various courses and curves of said Hill Drive, 553.05 feet to the point of beginning.

(b)    Lender's lien on the Mortgaged Property shall be subject only to those exceptions to title acceptable to Lender (the "Permitted Exceptions") as set forth in Section 4(h) below.

(c)    Borrower shall pay interest on the unpaid principal balance of the Loan from and including July 5, 2007 until paid, at the rate of NINE and NINE-TENTHS per cent (9.90%) per annum (the "Note Rate"), payable interest only, or more, monthly, commencing September 1, 2007 and on the first day of each succeeding month and continuing up to and including June 30, 2008 when the balance of principal and interest remaining unpaid shall be due and payable.

2

(d)     Additional terms of the Loan are set forth in their entirety in the Loan Documents. Pertinent terms include, but are not limited to, the following:

- Acceleration on sale or transfer ("Due on Sale");

- Restriction on further encumbrances (no junior liens) without Lender's prior written consent;

- Monthly payments by electronic funds transfer ("EFT") upon exhaustion of the interest reserve held by Lender for the benefit of Borrower as a condition of the Loan;

- Late charge on payments made after the tenth of the month;

- Interest rate increase to 24.00% at maturity or in event of default;

- No penalty for prepayment of the Loan in full or in part;

- A balloon payment due at maturity.

Reference should be made to the Loan Documents themselves for the particulars of all terms of the Loan.

2.     <u>Loan Documents</u>.

(a)     The Loan shall be evidenced by the following documents (collectively the "Loan Documents"), which shall be submitted by Lender to Settlement Agent for execution by Borrower:

(i)     The Agreement.

(ii)    Note Secured by Deed of Trust.

(iii)   Deed of Trust and Assignment of Rents.

(iv)    EFT Authorization.

3

(b)    The following Loan Documents shall hereafter be referred to as the "Closing Documents" and shall be submitted to COMMERCE TITLE COMPANY (the "Title Company") by Settlement Agent pursuant to these instructions:

   (i)    Deed of Trust and Assignment of Rents.

3.    Close of Escrow.

(a)    The "Close of Escrow" or "Closing" shall be the completion of the loan transaction contemplated by this Agreement as signified by the delivery of executed Loan Documents to Lender, the recording of the Closing Documents in the office of the Recorder of the County of Los Angeles, California, and the issuance of a Title Policy, as defined in Section 4(h), all in accordance with the terms of this Agreement.

(b)    The Closing shall occur on or about July 6, 2007.

4.    Directions to Settlement Agent Prior to Closing.

Prior to closing, Settlement Agent shall perform the following:

(a)    Obtain Borrower's execution of all Loan Documents, acknowledged and notarized as required, and return the original executed Loan Documents to Lender pursuant to Section 6 herein, except the Closing Documents, and as to such, provide a copy to Lender;

(b)    Obtain fire insurance in an amount not less than the principal amount of the Note or the insurable value of the Improvements, whichever amount is less, with the normal conditions including fire, extended coverage, vandalism, malicious mischief, and a losses payable endorsement naming Lender, LONE OAK FUND, LLC, Post Office Box 491457, Los Angeles, California 90049-9457, as payee, as mortgagee. A certificate of evidence of

4

such insurance shall be deposited in escrow and a copy provided to Lender prior to funding;

    (c)    Obtain Type H Property Tax Reporting Service for Lender for the duration of the Loan term;

    (d)    Obtain a deposit slip for the bank account Borrower is designating for debiting monthly payments by EFT;

    (e)    Certify that no junior financing, other than the Permitted Junior Encumbrance, is being employed in this transaction;

    (f)    Provide Lender and Borrower with an Estimated Closing Statement prior to requesting funding by Lender;

    (g)    Obtain any funding required by Borrower prior to requesting funding by Lender; and

    (h)    Submit the Closing Documents to Title Company for recordation in the Official Records of the County of Los Angeles, with instructions to record such documents in the order set forth in Section 2(b) *ONLY* when the Title Company is prepared and irrevocably committed to issue an **ALTA** Loan Policy of title insurance (the "Title Policy"), insuring Lender in the sum of $1,875,000.00, which sum is equal to *one hundred twenty five per cent* (125%) of the principal amount of the Loan, as a FIRST LIEN on the Mortgaged Property and subject only to the following Permitted Exceptions shown on Schedule B of Title Company's Preliminary Report, Order No. 3014539, dated as of May 29, 2007:

- Permitted Exceptions: Item numbers 1, 3 and 5.

- The following exceptions shall be DELETED and not appear on Lender's policy of title insurance: Item numbers 2, 4, 6, 7 and 8.

<div align="center">5</div>

(i)     The completion of all of the above is a condition precedent to any obligation Lender may have under this Agreement and the Loan Documents.

5.      Borrower's Payment of Costs and Fees.

(a)     Lender shall be without cost or expense in this transaction.

(b)     Lender shall fund escrow with the principal amount of the Loan, less the following charges debited to Borrower:

(i)     Interest on the principal Loan amount at the rate of 9.90% per annum in the amount of $412.50 per diem, calculated according to a 360-day year[1], from and including July 5, 2007 up to and including July 31, 2007 in the sum of $11,137.50.

(ii)    Commission payable to Lone Oak Industries Inc., licensed real estate brokers, California Department of Real Estate ("DRE") License Identification Number 01371863, for negotiating and arranging the Loan.[2] Said brokers shall be paid the sum of $15,000.00.

(iii)   A wire fee of $35.00.

(c)     Lender shall net fund escrow after deducting the costs and fees in Section 5(b).

(d)     Borrower shall pay for all other charges, in amounts to be determined by Settlement Agent, Title Company or by agreement between Borrower and a third party, including, but not limited to:

* Liens and encumbrances, which are chargeable to Borrower, required by Lender to be deleted from title pursuant to Section 4(h);

---

[1] Interest computed based on a 360-day year is greater than interest computed based on a 365-day year.

[2] The DRE may be contacted for license information at (916) 227-0931 or www.dre.ca.gov .

6

- Commission payable to South Pointe Financial Group, licensed real estate brokers, for negotiating and arranging the Loan;

- Commissions to brokers, other than those specifically identified herein, to whom Borrower is contractually obligated;

- Title insurance premiums;

- Recording charges;

- Escrow costs and fees;

- Fire insurance premiums;

- Property tax reporting service;

- Wire fees;

- Messenger and overnight delivery costs;

- Miscellaneous fees and costs.

6.    <u>Directions to Settlement Agent Regarding Delivery of Documents</u>.

(a)    The fully executed Loan Documents, exclusive of the Closing Documents, *must be in possession of Lender prior to funding.* Accordingly, those Loan Documents shall be <u>delivered or overnight expressed</u> to Lender's office:

> Lone Oak Fund, LLC
> 11611 San Vicente Boulevard, Suite 640
> Los Angeles, California 90049

- The Agreement;

- Note Secured by Deed of Trust.

(b)    Settlement Agent shall direct the providers to <u>mail</u> the following items to Lender's mailing address:

//

7

Lone Oak Fund, LLC
11611 San Vicente Boulevard, Suite 640
Los Angeles, California 90049

- Settlement Agent's Final Settlement Statement;

- ALTA Lender's Policy of Title Insurance;

- Property Tax Reporting Service;

- Recorded Closing Documents.

7.    Extension of Maturity Date.

(a)    Borrower shall have the option to extend the Maturity Date of the Note to any one of the dates set forth in (iii) below, provided that the following conditions precedent are met with regard to such extension:

(i)    Borrower has not been at any time in default under the Note, the Deed of Trust or any other Loan Document in the payment of principal, interest, taxes, insurance premiums, loan costs, and has been consistently timely in the making of such payments, or fees, and in the performance of the terms, conditions, and covenants of the Note, Deed of Trust and any other Loan Document;

(ii)    No event has occurred which, after notice, passage of time, or both, shall constitute an event of default under the terms of the Loan Documents;

(iii)    Borrower shall elect one of the following extended Maturity Dates and shall have paid to Lone Oak Industries Inc., licensed real estate brokers, the corresponding commission for the negotiation and arrangement of the loan extension:

8

| New Maturity Date | Commission |
| --- | --- |
| One (1) month to July 31, 2008 | 3/8 point |
| Two (2) months to August 31, 2008 | 5/8 point |
| Three (3) months to September 30, 2008 | 3/4 point |
| Six (6) months to December 31, 2008 | 1 point |

(iv) Borrower shall have executed a Loan Modification Agreement in Lender's form, which shall include the following modification to the Loan Documents: The interest rate payable by Borrower will be based on an Index. The Index is the prime lending rate as published by the Wall Street Journal, as that rate stands on June 30, 2008. Lender will calculate the interest rate payable by Borrower by adding TWO percentage points (2.00%) to the Index, but in no event shall the interest rate payable by Borrower be less than NINE and NINE TENTHS per cent (9.90%). The new interest rate will become effective on July 1, 2008; and

(v)     Borrower has given Lender written notice of its election to exercise the option no later than May 31, 2008, specifying the new Maturity Date selected.

8.     Borrower's Warranties.

Borrower hereby represents and warrants as follows:

(a)     Borrower has read and understands the Loan Documents and/or has employed counsel or representatives in connection therewith and acknowledges that the Loan Documents constitute the entire agreement of the parties with respect to the Loan, and supercede in all respects any and all other negotiations, representations, correspondence or communications between or among the parties, and their agents and representatives, whether oral or written;

9

(c)     This Agreement shall be construed under and in accordance with the laws of the State of California. The proper venue for any action filed by either party to enforce or interpret the provisions of this Agreement shall be the County of Los Angeles.

(d)     This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.

(e)     The headings used throughout this instrument have been used for convenience only and do not constitute matter to be considered in interpreting this Agreement.

(f)     In the event of any dispute hereunder or any proceeding to enforce the provisions hereof, regardless of whether the Loan contemplated by this Agreement actually closes, the prevailing party in such dispute or proceeding shall be entitled to recover, among other things, all costs, reasonable attorneys' fees and reasonable disbursements, regardless of whether such dispute or proceeding is handled by attorneys who are employees of such party or outside counsel. "Prevailing party in any dispute or proceeding" shall mean the party who obtains substantially all of the relief sought by such party.

(g)     Time is of the essence of this Agreement, it being understood that each date or time for performance set forth herein, particularly the Closing Date, and the obligations of the parties to be satisfied by such dates, have been agreed upon pursuant to specific negotiation by the parties.

(h)     This Agreement is intended to be solely for the benefit of Lender and

Borrower, and no party other than Settlement Agent shall have any other rights hereunder

or be deemed to be a third party beneficiary hereof.

(i)     Lender is licensed as a California Finance Lender, Department of

Corporations license number 603B623.

(j)     This Agreement does not constitute a commitment by Lender to make the

Loan until such time as all of the following events have occurred:

- The Agreement has been executed by Lender;

- A counterpart of such executed Agreement has been delivered to
  Settlement Agent or transmitted to Settlement Agent by facsimile;
  *and*

- The Loan has been funded by Lender.

(k)     NOTICE TO BORROWER: THIS LOAN REQUIRES A BALLOON
PAYMENT (THE FULL PRINCIPAL BALANCE OF THE LOAN) AT THE
MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE
BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN
A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON
PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY
COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE
NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE
MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE
THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE.
KEEP THIS IN MIND IN AGREEING TO THE AMOUNT AND THE TERMS OF
THIS LOAN.

BORROWER:

KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST A


By _____ Trustee

Peter Kvassay, Trustee

*Signatures Continued on Next Page*

12

KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST B


By _Peter Kvassay_ TRUSTEE
   Peter Kvassay, Trustee


LENDER:
LONE OAK FUND, LLC, a
California limited liability company

By: LONE OAK INDUSTRIES INC., a
California corporation, Manager


By _____
    James A. Rothstein, President


13

## NOTE SECURED BY DEED OF TRUST

### LOS ANGELES, CALIFORNIA

July 3, 2007

PRINCIPAL AMOUNT: $1,500,000.00

FOR VALUE RECEIVED, on or before June 30, 2008 (the Maturity Date), the undersigned, PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST A, as to an undivided 76.9% interest, and PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST B, as to an undivided 23.1% interest, in common (Borrower), whose address is 1554 Hill Drive, Los Angeles, California 90041, promises to pay to LONE OAK FUND, LLC, a California limited liability company (Lender), or its assigns, at 11611 San Vicente Boulevard, Suite 640, Los Angeles, California 90049, the sum of ONE MILLION FIVE HUNDRED THOUSAND and No/100 Dollars ($1,500,000.00), with interest on the unpaid principal balance of the Loan from and including July 5, 2007 until paid, at the rate of NINE and NINE-TENTHS per cent (9.90%) per annum (the "Note Rate"), payable interest only, or more, monthly, commencing September 1, 2007 and on the first day of each succeeding month and continuing up to and including June 30, 2008 when the balance of principal and interest remaining unpaid shall be due and payable.

The Note may be paid at anytime in full or in part without premium or penalty. Partial payments must be made in even, one thousand-dollar ($1,000.00) increments.

This Note is secured by that certain Deed of Trust and Assignment of Rents of even date herewith (the Deed of Trust), made by Borrower, as Trustor, for the benefit of Lender, as

1

EXHIBIT "C"

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE MORTGAGED

PROPERTY ("Due-on-Sale;" "No Further Encumbrance"): If Borrower sells, encumbers or

alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the

Mortgaged Property to be divested, whether voluntarily or involuntarily; or, if Borrower is an

entity and there is a sale or transfer of beneficial interests in Borrower equal to fifty per cent

(50.00%) or more of the beneficial ownership interests of Borrower outstanding at the date of

this Note; or if Borrower changes or permits to be changed the character or use of the Mortgaged

Property; or if title to the Mortgaged Property becomes subject to any lien or charge, voluntary

or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at

Lender's option, may, without prior notice, declare all sums evidenced by this Note, regardless

of their stated due dates, immediately due and payable and may exercise all rights and remedies

in this Note, the Deed of Trust and the Loan Documents.

On Borrower's failure to pay any installment or any other sum due under this Note or the

Loan Documents when due and payable, whether by extension, acceleration or otherwise, or an

Event of Default as set forth in the Deed of Trust, or any breach of any other promise or

obligation in this Note or any Loan Document or any other instrument now or hereafter securing

the indebtedness evidenced by this Note, then, in any such event, Lender may, at its option,

declare this Note (including, without limitation, all accrued interest) due and immediately

payable regardless of the Maturity Date. Lender may exercise this option to accelerate during

any default by Borrower regardless of any prior forbearance. Borrower expressly waives notice

of the exercise of this option.

Borrower agrees to pay the following costs, expenses and attorneys fees paid or incurred

by Lender, or adjudged by a court: (1) Reasonable costs of collection, costs and expenses and

3

attorneys fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed or foreclosure is commenced, including any such attorneys fees and costs in connection with any bankruptcy proceeding involving the debt evidenced by this Note or in connection with the Mortgaged Property; and (2) Costs of suit and such sums as a court may adjudge as attorneys fees in any action to enforce payment of the Note or any part of it.

Any advances made by Beneficiary under the terms of the Deed of Trust shall bear interest in accordance with the interest rate provisions stated herein.

If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights or of any breach, default or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender.

Borrower, endorsers and all other persons liable or to become liable on this Note waive presentment, protest and demand; notice of protest, demand and dishonor; and all other notices or matters of a like nature

This Note inures to and binds the heirs, legal representatives, successors and assigns of Borrower and Lender.

Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or consent of Borrower.

This Note shall be construed and enforceable according to the laws of the State of California for all purposes.

All agreements between Borrower and Lender are expressly limited, so that in no event or contingency whatsoever, whether by reason of the advancement of the proceeds of this Note,

4

acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances whatsoever, fulfillment of any provision of this Note or of the Deed of Trust or any other Loan Document, after timely performance of such provision is due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity, and if, under any circumstances whatsoever, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to the reduction of the unpaid principal balance under this Note and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

Except for any notice required by applicable law to be given in another manner, all notices provided in this Note or in the Deed of Trust shall be in writing and shall be given by (1) personal delivery, which shall be effective on the date of such delivery, or (2) by mailing such notice by deposit in the United States Mail, postage prepaid, certified mail, return receipt requested, which shall be effective as of the date set forth in the return receipt, or (3) by overnight courier of recognized reputation, marked for next business-day delivery, which shall be effective as of the date of receipt, addressed to the parties at the addresses set forth in this Note, or at such other addresses as may have been designated by written notice to each other in the manner provided in this paragraph. All notices provided for in this Note and the Deed of

5

Trust shall be deemed to have been given to Borrower or Lender when given in the manner specified in this paragraph.

The Loan has been negotiated and arranged by Lone Oak Industries Inc., licensed real estate brokers, California Department of Real Estate license identification number 01371863, for compensation paid by Borrower.

Lender is licensed as a California Finance Lender, Department of Corporations license number 603B623.

Time is of the essence with respect to all obligations of Borrower under this Note.

KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST A


By _____ TRUSTEE
Peter Kvassay, Trustee


KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST B


By _____ TRUSTEE
Peter Kvassay, Trustee



**This page is part of your document - DO NOT DISCARD**



**20071618625**    Pages: 019

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**07/09/07 AT 08:00AM**

Fee: 73.00
Tax: 0.00
Other: 0.00
Total: 73.00

Title Company

**TITLE(S) :**

L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

| | | | | - | | | | | - | | | | |



E34299    **THIS FORM IS NOT TO BE DUPLICATED**



Commerce Title

Recording Requested By
COMMERCE TITLE COMPANY
Order No. 3014539
APN: 5669-011-020

07/09/07

20071618625

When Recorded Mail To

LONE OAK FUND, LLC
11611 San Vicente Boulevard, Suite 640
Los Angeles, CA 90049

## DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST AND ASSIGNMENT OF RENTS (Deed of Trust) is made on June 3, 2007, among:

PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST A, as to an undivided 76.9% interest, and PETER KVASSAY, Trustee of the KVASSAY FAMILY TRUST, dated February 26, 1993, TRUST B, as to an undivided 23.1% interest, in common (Borrower), as Trustor, whose address is 1554 Hill Drive, Los Angeles, California 90041, and

LONE OAK INDUSTRIES INC., a California corporation (Trustee), as Trustee, whose address is Post Office Box 491457, Los Angeles, California 90049-9457, and

LONE OAK FUND, LLC, a California limited liability company (Lender), as Beneficiary, whose address is 11611 San Vicente Boulevard, Suite 640, Los Angeles, California 90049.

TO SECURE THE FULL AND TIMELY PAYMENT OF THE INDEBTEDNESS AND THE FULL AND TIMELY PERFORMANCE AND DISCHARGE OF THE OBLIGATIONS, BORROWER GRANTS, BARGAINS, SELLS, AND CONVEYS TO TRUSTEE, WITH POWER OF SALE AND RIGHT OF ENTRY, THE MORTGAGED PROPERTY AS DEFINED HEREIN. The Mortgaged Property includes, without limitation, the real property described as:

Those portions of Lot 2 of Tract No. 523, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 17, Page 12 of Maps, in the office of the Recorder of said County and of Lot 59, Watts Sub-Division, as per map recorded in Book 5, Pages 200 and 201, Miscellaneous Records of said County, described as a whole as follows:

Beginning at an angle point in the west line of said Lot 2 at the intersection of Hill Drive with Dahlia Drive; thence southerly following the various courses and curves of Dahlia Drive, 216.73 feet, measured at right angles therefrom; thence easterly along said parallel line, 261.24 feet to the west line of the land described in deed recorded in Book 4814 Page 208 of official records; thence northerly along said west line, 315.18 feet to the southwesterly line of said Hill Drive; thence northwesterly along said Drive, 3.90 feet to the northeast corner of said Lot 2; thence northwesterly and southwesterly following the various courses and curves of said Hill Drive, 553.05 feet to the point of beginning.

BORROWER IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO LENDER the rents, income, issues and profits from the Mortgaged Property, absolutely and unconditionally, and not merely as additional

1

security for the indebtedness secured by this Deed of Trust. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

1. **Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings; capitalized terms not otherwise defined herein shall have the meaning given to such terms in the other Loan Documents associated with this Loan:

1.1. "Attorneys Fees." Any and all attorney fees, paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and attorney costs and expenses incurred or paid by Lender in protecting its interest in the Mortgaged Property and enforcing its rights under this Deed of Trust.

1.2. "Borrower." The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

1.3. "Default Rate." The Default Rate as defined in the Note.

1.4. "Event of Default." An Event of Default as defined in this Deed of Trust.

1.5. "Environmental Laws." Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code §§9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 United States Code §§6901-6992k); the Hazardous Materials Transportation Act (49 United States Code §§5101-5127); the Federal Water Pollution Control Act (33 United States Code §§1251-1376); the Clean Air Act (42 United States Code §§7401-7671q); the Toxic Substances Control Act (15 United States Code §§2601-2692); the Refuse Act (33 United States Code §§407-426p); the Emergency Planning and Community Right-To-Know Act (42 United States Code §§11001-11050); the Safe Drinking Water Act (42 United States Code §§300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (Health and Safety Code §§25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (Health and Safety Code §§25396-25399.2); and the Porter-Cologne Water Quality Control Act (Water Code §§13000-14076).

1.6. "Fixtures." All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

1.7. "Governmental Authority." Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

2

4

1.8. "Governmental Requirements." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.9. "Hazardous Substance." Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code §§2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations §172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real Mortgaged Property adjacent to it.

1.10. "Impositions." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

1.11. "Improvements." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

1.12. "Indebtedness." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1. That certain Note Secured by Deed of Trust of even date herewith in the amount of $1,500,000.00 given by Borrower to Lender;

1.12.2. This Deed of Trust and all other Loan Documents;

1.12.3. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

3

-5

1.12.4. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

1.12.6. The real estate or any interest in it described in this Deed of Trust as the Mortgaged Property, together with all Improvements and Fixtures and all rights, titles, and interest appurtenant to it.

1.13. "Leases." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

1.14. "Legal Requirement(s)." Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

1.15. "Lender." The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

1.16. "Loan." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

1.17. "Loan Documents." Collectively, this Deed of Trust, the Assignment of Rents, the Note, the Real Property Loan Agreement and Escrow Instructions and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the loan.

1.18. "Mortgaged Property." The Land, Improvements, Fixtures, Personality, Leases, and Rents, together with:

1.18.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops rowing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or

4

6

gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.18.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.18.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.18.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them;

1.18.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.18.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.18.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same;

1.18.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.18.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits,

5

7

or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied; and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land Fixtures, Personalty, or any other Mortgaged Property;

1.18.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all local, state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.18.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.18.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.18.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.18.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.18.15. All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

1.19. "Note." The Note Secured by Deed of Trust of even date herewith, payable by Borrower to the order of Lender in the principal amount of $1,500,000.00, evidencing the Loan, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Note.

1.20. "Obligation(s)." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the Loan secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust. The Obligations specifically include any Capital Guaranty of even date herewith, which is not secured by this Deed of Trust.

8

1.21. "Permitted Encumbrance(s)."  At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

1.22. "Person."  Natural persons, corporations, limited liability companies, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

1.23. "Rents."  All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

1.24. "Water Rights."  All water rights of whatever kind or character surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Loan Documents.

2. Repair and Maintenance of Mortgaged Property.  Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arises against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivated, irrigated, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

3. Insurance.

3.1. Casualty Insurance.  Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows:

3.1.1. Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

3.1.2. Rent or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

3.1.3. During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, without gaps or lapsed coverage, for any completed portion of the Improvements; and

3.1.4. Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender at the time this Deed of Trust is recorded.

3.2. Liability Insurance. Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $1,000,000 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

3.3. Other Insurance. Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be reasonably required by Lender from time to time.

3.4. Transfer of Title. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this Deed of Trust or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

4. Condemnation and Insurance Proceeds.

4.1. Assignment to Lender. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types or damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or

8

10

proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may joint Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

4.2. Insurance Payments. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement.

5. Taxes and Other Sums Due. Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding paragraph and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

6. Right To Collect and Receive Rents. Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the

9

exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or another person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that either the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

7. Funds for Taxes and Insurance. Regardless of whether Borrower is in default under this Deed of Trust or any of the Loan Documents, Lender may, at its option to be exercised on written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under Sections 3 and 5 of this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time before the due date of these obligations the amounts then on deposit shall be insufficient to pay said obligations under in full, Borrower shall deposit the amount of the deficiency with Lender after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

| 2

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of it security under this Deed of Trust, apply such amounts or any portion of it to any indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made hereunder, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statement for insurance premiums and statements for any other obligations referred to above as soon as Borrower receives such documents.

8. Borrower's Failure To Comply With Deed of Trust. If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or non-judicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

9. Sums Advanced To Bear Interest and To Be Secured by Deed of Trust. At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

10. Events of Default. The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

10.1. Payment of Indebtedness. Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on the date stipulated in any Loan Document, by acceleration, or otherwise. Failure to pay the Loan in full on the Maturity Date is an immediate Event of Default.

10.2. Performance of Obligations. The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required, and the continuance of such failure after Lender gives written notice of such failure to Borrower.

10.3. Sale, Lease, Encumbrance, or Other Transfer. Any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without

Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), without Lender's prior written consent.

10.4. Breach of Representations. The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

10.5. Default Under Prior Deed of Trust, Security Instrument, or Lien. The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

11. Acceleration on Transfer or Encumbrance of Mortgaged Property. If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers, or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interest in Borrower equal to 50 percent or more of the beneficial ownership interest of Borrower outstanding at the date of this Deed of Trust; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust.

12. Acceleration and Sale on Default. If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may by then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

r4

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows:

First:  To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold.

Second:  To the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid.

Third:  To the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents.

Fourth:  To the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

13. Trustee.  The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The Trustee shall not be obligated to notify any part to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

14. Power of Trustee To Reconvey or Consent.  At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

15. Duty to Reconvey.  On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust.  The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness.  The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property."  Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

16. Substitution of Trustee.  Lender, at Lender's option, my from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in

07 161.2 5

*15*

which the Mortgaged Property is located, shall constitute conclusive proof of the property substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, and then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

17. Environmental Matters.

17.1. Borrower's Representations and Warranties. Borrower represents and warrants to Lender that:

17.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any environmental Laws.

17.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

17.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

17.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

17.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

17.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

17.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

17.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

17.1.9 Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

14

17.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

17.2. Survival of Representations and Warranties. The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

17.3. Notice to Lender. Borrower shall give prompt written notice to Lender of:

17.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

17.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

17.3.3. Any notice given to Borrower under California Civil Code §851(b); and

17.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

17.4. Lender's Right To Join Legal Actions. Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

17.5. Borrower's Indemnity. Borrower shall indemnify and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss; damage, cost, expense, or liability directly or indirectly rising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

18. Notices. Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing: (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; and (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be address to the appropriate party at is address as set forth in this Deed of Trust.

Notices shall be deemed effective on the earliest (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of

mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

19. Application of Payments. Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

20. Remedies Are Cumulative. Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

21. Obligations of Borrower Joint and Several. If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

22. Severability. If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

23. Delegation of Authority. Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

24. General Provisions.

24.1. Successors and Assigns. This Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

24.2. Meaning of Certain Terms. As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

24.3. Authorized Agents. In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

24.4. Gender and Number. Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

24.5. Captions. Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

24.6. Time Is of the Essence. As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the

16

18

performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the non-performing party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

25. The Loan, as evidenced by this Deed of Trust and the other Loan Documents, has been negotiated and arranged by Lone Oak Industries Inc., licensed real estate brokers, California Department of Real Estate license identification number 01371863, for compensation paid by Borrower.

26. Lender is licensed as a California Finance Lender, Department of Corporations license number 603B623.

27. The undersigned Borrower requests that in accordance with Civil Code Section 2924b, a copy of any Notice of Default and any Notice of Sale under this Deed of Trust be mailed to him at his address specified in this Deed of Trust.

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST A


By _Peter Kvassay_   TRUSTEE
     Peter Kvassay, Trustee


KVASSAY FAMILY TRUST, dated
February 26, 1993, TRUST B


By _Peter Kvassay_   TRUSTEE
     Peter Kvassay, Trustee

07 16 1~125

17

19

STATE OF CALIFORNIA          }
                             } ss.
COUNTY OF LOS ANGELES  }

On ___7-3-07___ before me, the undersigned, _Deborah Velez_, a
Notary Public in and for said County and State, personally appeared PETER KVASSAY, known to me or proved
to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and
acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the
instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

DEBORAH VELEZ
Commission # 1684661
Notary Public - California
Orange County
My Comm. Expires Aug 24, 2010

Notary Public

07 1818.25

18

Order Number: 3014329
Page Number: 6

# WIRE TRANSFER INSTRUCTIONS

**Note:** All funds wired for this order must be received on:

**BANK:** Comerica Bank Escrow Account, California

**ABA:** 121137522

**FOR ACCOUNT OF:** Commerce Title Company – Account #:

**BANK ADDRESS:** 9320 S. La Cienega Blvd, Suite 604
Inglewood, CA 90301

**ACCOUNT NO.:** 1894849248

**REFERENCE FILE NO.:** 3014329

**ATTN:** John Kitchin

**CUSTOMER NAME:** / Kwassiy

**PROPERTY:** 1534 Hill Drive, Los Angeles, California 90041

Funds for other transactions by Commerce Title Company must not be combined into wire or funds may be returned.

All wires must reference (1) Commerce Title Account #: – and (2) our File Number or funds may be returned.

Thursday, June 21, 2007.tif

Order Number: 3014539
Page Number: 7

NOTICE

*(body text too faded to read)*

Order Number: 3014538
Page Number: 8

EXHIBIT A (Revised 06-17-06)
LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)

1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY - 1990

EXCLUSIONS FROM COVERAGE

EXCEPTIONS FROM COVERAGE

2. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY OF TITLE INSURANCE (10/22/03)
ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

EXCLUSIONS FROM COVERAGE

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. Land use
   d. improvements on the Land
   e. Land division
   f. environmental protection

Order Number: 3014538
Page Number: 9

Order Number: 3014538
Page Number: 10

Exhibit a Rights

*as described within the area described, sketched and referred to in item 3 of Schedule A, or
*an annexed, affect, or easement than such, described
This exclusion does not limit the private search option item 3 of Covered Title Right.

AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - (10-17-92)
WITH ALTA ENDORSEMENT FORM 1 COVERAGE
EXCLUSIONS FROM COVERAGE

[illegible heavily degraded text block]

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

Thursday, June 21, 2007:BT

The page is largely illegible due to heavy degradation. Only header and a few fragments are readable.

Order Number: 3014639
Page Number: 11

Order Number: 30143539
Page Number: 12

Order Number: 2074539
Page Number: 13



# COMMERCE TITLE

## PRIVACY POLICY NOTICE

Dear Customer,

*(text illegible due to degradation)*

No response to this notice is required, but if you have questions, please write to us:

Commerce, The Family of Companies - Privacy
P.O. Box 199000
Dallas, Texas 75219-9000

### Commerce, The Family of Companies

*(text illegible due to degradation)*